IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| SULIMAN ALI,           Plaintiff | : : : | No. 1:20-cv-01462 |
| v. | : : | (Judge Kane) |
| K. KAUFFMAN and CONNIE GREEN,           Defendants | : : : | |

## MEMORANDUM

On August 18, 2020, pro se Plaintiff Suliman Ali ("Ali"), who is currently incarcerated at the State Correctional Institution in Huntingdon, Pennsylvania ("SCI Huntingdon"), initiated the above-captioned case by filing a complaint pursuant to 42 U.S.C. § 1983 against Defendants Superintendent K. Kauffman ("Kauffman") and Superintendent's Assistant and Grievance Coordinator Connie Green ("Green").  (Doc. No. 1.)  Presently before the Court is Defendants' motion to dismiss (Doc. No. 13) Ali's complaint.  Ali has not opposed the motion to dismiss. For the following reasons, the Court will grant Defendants' motion to dismiss.

**I.     BACKGROUND**

    **A.     Summary of Plaintiff's Complaint**

Ali alleges that since March 2020, inmates housed at SCI Huntingdon have "been exposed at a high rate to the [COVID-19] virus because of the conditions of the prison."  (See Doc. No. 1 at 1.)  Ali avers that there is no ventilation in the prison, which has led to at least 183 positive COVID-19 cases and five deaths.  (See id.)  According to Ali, "over 54 staff members have tested positive" for COVID-19.  (See id.)  Ali maintains that Defendant Kauffman "allow[s] his staff to come to work without the correct [personal protective equipment ("PPE")]."  (See id.) He states that the gym is being used as a "make shift hospital" and that staff pass out meals and mail without using gloves and with their masks pulled down or off their faces.  (See id. at 2.)  Ali

avers that he and other inmates are "locked down 23 hours a day." (See id.) He asserts that they have been given "a little more time out for showers and yard," but that "the situation isn't safe" because there is inadequate social distancing. (See id.) Ali filed a grievance regarding these issues, but Defendant Green dismissed it as untimely because it was not filed within the applicable fifteen-day time limit. (See id. at 3.) Based upon the foregoing, Ali alleges violations of his Eighth Amendment rights. (See id.) Ali seeks declaratory relief and damages, as well as injunctive relief directing staff to use the correct PPE and to use "gloves when handling food and mail." (See id. at 4.)

Ali also filed a supplement to his complaint on September 24, 2020, in which he largely repeats the allegations that he makes in his complaint. (See Doc. 5.) The Court will treat this supplement as part of Ali's complaint in order to give a liberal construction to Ali's allegations.

### B. Summary of the Department of Corrections ("DOC")'s Response to COVID-19

The DOC has provided publicly available information regarding its response to the COVID-19 pandemic.[1] See COVID-19 and the DOC, Department of Corrections, https://www.cor.pa.gov/Pages/COVID-19.aspx (last visited Aug. 30, 2021). The DOC offers on-site vaccination against COVID-19 to all inmates and staff at every state correctional institution in Pennsylvania. In-person visits were suspended entirely from March 13, 2020 to May 2021, and have only resumed at select facilities since then. See id. Visitors that are allowed in prisons are given temperature checks, screened for COVID-19, and required to wear masks. See id.

---

[1] The Court may take judicial notice of this information, as it is publicly available on a governmental website. See Vanderklok v. United States, 868 F.3d 189, 205 (3d Cir. 2017).

All inmates in the DOC system are screened for COVID-19 when they leave a DOC facility and when they return to the DOC facility. See id. The DOC has also designated SCI-Smithfield as a dedicated reception site for all incoming male inmates. See id. At SCI-Smithfield, the inmates are "screened, tested and monitored for COVID-19 before being sent through the system." See id. Any inmates with flu-like symptoms are not accepted into the system. See id. Inmates are provided disposable masks and are strongly encouraged to use them. See id. They are provided materials to clean their cells regularly. See id.

The DOC has also implemented safety measures with regard to its staff. All individual staff members entering a facility are screened for COVID-19, and any individual who is exhibiting a fever of at least 100 degrees or any signs of cold or flu is not allowed to enter the facility. See id. Masks are required for all staff members in DOC facilities. See id. Staff are also provided personal protective equipment, which is worn according to CDC guidelines. See id.

The DOC regularly holds town hall meetings with its inmates to review sanitation guidelines and COVID-19 protocols. See id. The DOC also makes soap, masks, towels, and anti-bacterial spray available throughout its facilities, and soap is provided to inmates free of charge. (Id.) Radios and other equipment in DOC facilities are cleaned throughout the day. See id.

## II.     LEGAL STANDARDS

### A.     Motion to Dismiss Pursuant to Federal Rule of Civil Procedure 12(b)(6)

Federal notice and pleading rules require the complaint to provide the defendant notice of the claim and the grounds upon which it rests. See Phillips v. Cty. of Allegheny, 515 F.3d 224,

232 (3d Cir. 2008).  The plaintiff must present facts that, accepted as true, demonstrate a plausible right to relief.  See Fed. R. Civ. P. 8(a).  Although Federal Rule of Civil Procedure 8(a)(2) requires "only a short and plain statement of the claim showing that the pleader is entitled to relief," a complaint may nevertheless be dismissed under Federal Rule of Civil Procedure 12(b)(6) for its "failure to state a claim upon which relief can be granted."  See Fed. R. Civ. P. 12(b)(6).

When ruling on a motion to dismiss under Rule 12(b)(6), the Court accepts as true all factual allegations in the complaint and all reasonable inferences that can be drawn from them, viewed in the light most favorable to the plaintiff.  See Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009); In re Ins. Brokerage Antitrust Litig., 618 F.3d 300, 314 (3d Cir. 2010).  To prevent dismissal, all civil complaints must set out "sufficient factual matter" to show that their claims are facially plausible.  See Iqbal, 556 U.S. at 678; Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009).  The plausibility standard requires more than a mere possibility that the defendant is liable for the alleged misconduct: "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – 'that the pleader is entitled to relief.'"  See Iqbal, 556 U.S. at 679 (citing Fed. R. Civ. P. 8(a)(2)).

Accordingly, the Third Circuit has identified the following steps that a district court must take when reviewing a 12(b)(6) motion: (1) identify the elements that a plaintiff must plead to state a claim; (2) identify any conclusory allegations contained in the complaint that are "not entitled" to the assumption of truth; and (3) determine whether any "well-pleaded factual allegations" contained in the complaint "plausibly give rise to an entitlement to relief."  See Santiago v. Warminster Twp., 629 F.3d 121, 130 (3d Cir. 2010) (internal citations and quotation

marks omitted).  The Third Circuit has specified that in ruling on a Rule 12(b)(6) motion to dismiss for failure to state a claim, "a court must consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents."  See Mayer v. Belichick, 605 F.3d 223, 230 (3d Cir. 2010) (citing Pension Benefit Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993)).

In the context of pro se prisoner litigation, the Court must be mindful that a document filed pro se is "to be liberally construed."  See Estelle v. Gamble, 429 U.S. 97, 106 (1976).  A pro se complaint, "however inartfully pleaded," must be held to "less stringent standards than formal pleadings drafted by lawyers" and can be dismissed for failure to state a claim only if it appears beyond a doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief.  See Haines v. Kerner, 404 U.S. 519, 520-21 (1972).

### B.  Section 1983 Standard

Section 1983 is the vehicle by which private citizens may seek redress for violations of federal constitutional rights committed by state officials.  See 42 U.S.C. § 1983.  The statute states, in pertinent part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

Id.  "Section 1983 is not a source of substantive rights," but is merely a means through which "to vindicate violations of federal law committed by state actors."  See Pappas v. City of Lebanon, 331 F. Supp. 2d 311, 315 (M.D. Pa. 2004) (quoting Gonzaga Univ. v. Doe, 536 U.S. 273, 284-85 (2002)).  To state a cause of action under Section 1983, a plaintiff must allege that: (1) the

5

conduct complained of was committed by persons acting under color of state law; and (2) the conduct violated a right, privilege, or immunity secured by the Constitution or laws of the United States.  See Harvey v. Plains Twp. Police Dep't, 421 F.3d 185, 189 (3d Cir. 2005) (quoting West v. Atkins, 487 U.S. 42, 48 (1988)).

## III.  DISCUSSION

Defendants assert that the Court should dismiss Ali's complaint because: (1) Ali failed to state a plausible Eighth Amendment claim; and (2) Defendant Green lacks personal involvement in the alleged violations of Ali's rights.  (See Doc. No. 14 at 2.)  The Court will first consider whether Ali states an Eighth Amendment claim upon which relief may be granted.

### A.  Eighth Amendment Claim

In order to state an Eighth Amendment claim as to one's conditions of confinement, a plaintiff must allege that: "(1) he was incarcerated under conditions imposing a substantial risk of serious harm, (2) the defendant-official was deliberately indifferent to that substantial risk to his health and safety, and (3) the defendant official's deliberate indifference caused him harm."  See Bistrian v. Levi, 696 F.3d 352, 367 (3d Cir. 2015).  Conditions of confinement violate the Eighth Amendment if they "alone or in combination . . . deprive inmates of the minimal civilized measure of life's necessities."  See id. at 347.  Such necessities include "adequate food, clothing, shelter, and medical care."  See Farmer, 511 U.S. 825, 832 (1994).

Here, Defendants do not dispute that the objective prong is met in the instant case.  See Dixon v. United States, No. 20-5994, 2020 WL 3249231, at *3 (D.N.J. June 16, 2020) (concluding that the inmate-plaintiff could meet the objective prong of an Eighth Amendment claim "because COVID-19 is a very contagious virus that can cause serious health complications or death in vulnerable people").  The Court, however, agrees with Defendants that Ali has failed

to allege facts suggesting that Defendants demonstrated deliberate indifference to the risk posed by COVID-19.  As noted supra, the DOC has adopted detailed preventative steps to mitigate the risk to inmates and staff and to control the spread of COVID-19 throughout the state correctional institutions.  The Court may take judicial notice of this information, as it is publicly available on a governmental website.  See Vanderklok, 868 F.3d at 205.  A review of these steps suggests that DOC officials, including Defendants, have not acted unreasonably with respect to the threat posed by COVID-19 and instead have instituted measures to safeguard the entire inmate population, including Ali.

While the Court understands Ali's legitimate concerns regarding the COVID-19 pandemic, it agrees with the numerous decisions in this district that have concluded that similar allegations do not support a plausible inference that officials have demonstrated deliberate indifferent to inmates' Eighth Amendment rights.  See Wilkins v.Wolf, No. 1:20-CV-02450, 2021 WL 1578250, at *7 (M.D. Pa. Apr. 22, 2021) (concluding that complaint brought by another inmate in SCI-Huntingdon did not state an Eighth Amendment claim upon which relief could be granted with respect to DOC's response to COVID-19); Bevins v. Kauffman, No. 1:20-CV-02012, 2021 WL 322168, at *5 (M.D. Pa. Feb. 1, 2021) (concluding that complaint brought by SCI-Huntingdon inmate that was essentially identical to the complaint in this case failed to state an Eighth Amendment claim upon which relief could be granted); see also, e.g., Simon v. Smith, No. 1:21-CV-00970, 2021 WL 2711548, at *7 (M.D. Pa. July 1, 2021); Allen v. Wetzel, No. 1:21-CV-00182, 2021 WL 2254997, at *7 (M.D. Pa. June 3, 2021); Christian v. Garman, No. 1:20-CV-01842, 2021 WL 1017251, at *7 (M.D. Pa. Mar. 17, 2021).  From Ali's complaint, as pled, the Court "cannot conclude that, when faced with a perfect storm of a contagious virus and the space constraints inherent in a correctional facility, [Defendants] here acted unreasonably

by 'doing their best.'" See Swain v. Junior, 961 F.3d 1276, 1289 (11th Cir. 2020).  The Court, therefore, will grant Defendants' motion to dismiss (Doc. No. 13) and dismiss Ali's complaint (Doc. No. 1) for failure to state a plausible Eighth Amendment claim.  Having reached that conclusion, the Court will not address Defendants' remaining argument that the claims against Defendant Green should be dismissed for lack of personal involvement.

### B. Leave to Amend

Courts are cautioned that because of the applicable pleading standard, a plaintiff should generally be granted leave to amend before dismissing a claim that is merely deficient.  See Grayson v. Mayview State Hosp., 293 F.3d 103, 108 (3d Cir. 2002).  The federal rules allow for liberal amendment in light of the "principle that the purpose of pleading is to facilitate a proper decision on the merits."  See Foman v. Davis, 371 U.S. 178, 182 (1962) (citations and internal quotations omitted).  The Court may deny a motion to amend where there is "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of the amendment."  See id.  The Court must also determine that a proposed amendment would be futile if the complaint, as amended, would not survive a motion to dismiss for failure to state a claim.  See In re NAHC, Inc. Sec. Litig., 306 F.3d 1314, 1332 (3d Cir. 2002).

Based on the foregoing, the Court cannot conclude that it would be futile or prejudicial to permit Ali to file an amended complaint against Defendants that corrects the deficiencies identified herein.  Ali is advised that the amended complaint must be complete in all respects.  It must be a new pleading that stands by itself without reference to the original complaint or any other document already filed.  The amended complaint should set forth Ali's claims in short,

concise, and plain statements as required by Rule 8 of the Federal Rules of Civil Procedure. Each paragraph should be numbered.  It should specify which actions are alleged as to which defendants and sufficiently allege personal involvement of the defendant in the acts that he claims violated his rights.  Mere conclusory allegations will not set forth a cognizable claim.

## IV.   CONCLUSION

For the foregoing reasons, the Court will grant Defendants' motion to dismiss.  (Doc. No. 13.)  The Court, however, will grant Ali leave to file an amended complaint.  An appropriate Order follows.

s/ Yvette Kane
Yvette Kane, District Judge
United States District Court
Middle District of Pennsylvania
